**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| WILLIAM DOYLE,<br>    Appellant, | DOCKET NUMBER<br>DE-0752-21-0204-I-2 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>    Agency. | DATE: April 4, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Bobby R. Devadoss, Esquire, Claire Ocana, Esquire, and Morgan Valasquez, Esquire, Dallas, Texas, for the appellant.

Eric J. Teegarden, Esquire, Fort McCoy, Wisconsin, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed his removal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to address an additional due process claim, we AFFIRM the initial decision.

## BACKGROUND

The appellant was removed from his position as Alcohol & Drug Control Coordinator for the Army Reserve Command at Fort Douglas in Salt Lake City, Utah, for "sending an electronic mail (email) message to multiple recipients that included language of a threatening nature and for being on duty while under the influence of alcohol/drugs, to a degree which would interfere with proper performance of duty or would be prejudicial to the maintenance of discipline." *Doyle v. Department of the Army*, MSPB Docket No. DE-0752-21-0204-I-1, Initial Appeal File (IAF), Tab 7 at 13. The agency specifically alleged that the appellant sent an email to approximately 7,500 employees and contractors within the 76th Operation Response Command in which he said "[y]ou are traitors to the US Constitution and God. You will die." *Id.* The agency further alleged that on the same day, the appellant had telephone conversations both with his first-level supervisor and with local police in which he admitted sending the email and appeared to be intoxicated because he was slurring his words. *Id.* at 13, 96. As a result of the appellant's email, "tenant organizations on Fort Douglas released their workforces early" and "Fort Douglas increased its security posture." *Id.* at 14.

The appellant filed this appeal. IAF, Tab 1 at 4, 6. After holding a hearing, the administrative judge issued an initial decision affirming the removal. *Doyle v. Department of the Army*, MSPB Docket No. DE-0752-21-0204-I-2, Refiled Appeal File (RAF), Tab 7, Initial Decision (ID) at 1, 17. She found that the agency proved its narrative charge by preponderant evidence. ID at 5-7. She rejected the appellant's implied arguments that the agency violated his due process rights. ID at 12-16; *e.g.*, IAF, Tab 7 at 24-26. She concluded that the agency proved a nexus between the appellant's misconduct and the efficiency of the service, that the deciding official properly considered the relevant *Douglas* factors, and that the penalty of removal was within the limits of reasonableness.[2] ID at 7-12.

The appellant has filed a petition for review, and the agency has filed a response. Petition for Review (PFR) File, Tabs 1, 3. On review, the appellant challenges the administrative judge's finding that the agency met its burden of proof concerning the charge and the reasonableness of the penalty. PFR File, Tab 1 at 6-9, 13-15. He argues that the administrative judge erred in crediting the testimony of both his first-level supervisor and the deciding official. *Id.* at 11-13. He also reasserts most of his due process claims and raises new ones. PFR File, Tab 1 at 9-11, 14-15.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge properly sustained the charge.</u>

The agency proposed and ultimately removed the appellant based on a single, unlabeled narrative charge. IAF, Tab 7 at 11-15, 87-92. It generally described his misconduct as sending an email with "threatening language" and being under the influence of alcohol such that it could interfere with his work performance or the maintenance of discipline. *Id.* at 13, 87. The administrative judge found that the agency proved its charge, including that the appellant sent

---

[2] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board provided a nonexhaustive list of factors relevant to penalty determinations.

the email in question while working and was intoxicated when he did so. ID at 5-7. She also concluded that the appellant's email caused the agency to take certain increased security measures and caused tenant organizations to release their full-time staff early on the day in question. ID at 3, 7; IAF, Tab 7 at 22.

The parties do not dispute on review that the appellant sent the email while working. ID at 6; PFR File, Tab 1 at 7. However, the appellant appears to disagree that the agency's increased security measures were sufficient to justify its description of his email as threatening. ID at 7; PFR File, Tab 1 at 14. He concedes that he had "one drink during lunch prior to sending his email" and that he was still under the influence of alcohol when he spoke to the police 1 hour after sending the email. Hearing Transcript (HT) at 13, 16 (testimony of the appellant); IAF, Tab 7 at 97; PFR File, Tab 1 at 7. However, he disagrees that, as charged by the agency, he was intoxicated such that he could not perform his job duties. PFR File, Tab 1 at 6-7. He also argues that the agency failed to prove that his email interfered with the maintenance of discipline. *Id.* at 8.

We turn first to the appellant's arguments that the agency's security measures do not reflect that his email was threatening, and, relatedly, that the agency failed to prove his email was prejudicial to the maintenance of discipline. PFR File, Tab 1 at 6-7, 11. Although not framed by the appellant as such, we find that these arguments go to the interpretation of the agency's charge. An agency is not required to affix a label to a charge but may simply describe actions that constitute misbehavior in narrative form in its charge letter. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202-03 (1997). Hypertechnical common law pleading is not Board practice, and so an agency is not required to narrowly label its charge with magic words for it to be sustained by the Board. *Id.* at 203. Here, the administrative judge appropriately found that the gravamen of the agency's charge was that the appellant sent the email at issue and was impaired by alcohol during the workday. ID at 6. Accordingly, she found that the agency

was not required to prove that the appellant threatened his coworkers under the *Metz* test, and instead sustained the specification because the agency proved the facts outlined in its proposal. ID at 7 (citing *Metz v. Department of the Treasury*, 780 F.2d 1001, 1002-04 (Fed. Cir. 1986) (identifying five evidentiary factors for determining whether an agency proved an employee made a threat under the applicable reasonable person standard)). We find no error in this respect. The mere fact that an agency describes an appellant's conduct as "threatening" in its narrative charge does not require the application of *Metz*. *See Otero*, 73 M.S.P.R. at 201-04 (declining to apply the *Metz* test to a charge of improper conduct notwithstanding the agency's description of the appellant's conduct as "threatening" in the narrative accompanying the charge); *see also Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 28 (2007) (noting that the agency charged the appellant with inappropriate remarks, not with making a threat, and therefore, it was not required to prove whether the conduct constituted a threat); *Wiley v. U.S. Postal Service*, 102 M.S.P.R. 535, ¶¶ 2, 10-11 (2006) (finding that the agency was not required to prove that the appellant's threatening remarks constituted a threat under the *Metz* test when the agency charged him with improper conduct in violation of its zero tolerance policy based on threatening remarks, which he made in the presence of two coworkers), *aff'd per curiam*, 218 F. App'x 1001 (Fed. Cir. 2007). Here, the agency specified in its proposed removal that the appellant sent the email, its contents, the date it was sent, and its recipients. IAF, Tab 7 at 87. We discern no basis to disturb the administrative judge's unchallenged determination that the agency proved these facts; thus, she did not err in finding that the agency proved its narrative charge. ID at 5-6.

In any event, the appellant's argument regarding the agency's security response is unavailing. According to the appellant, the agency was already considering increasing security. PFR File, Tab 1 at 13. The record contradicts the appellant's argument. During the hearing, the Fourth Protection

Noncommissioned Officer-in-Charge (NCOIC) testified that he was considering increasing security at the Fort Douglas gates due to the events of January 6, 2021, but decided it was unnecessary due to other precautions in place. HT at 78-79, 83-85 (testimony of the NCOIC). However, he testified that the General in charge of Fort Douglas ordered that military police be present at the gates in response to the appellant's email. HT at 78-79 (testimony of the NCOIC). The appellant has not challenged the veracity of the NCOIC's testimony. Thus, the appellant's assertion that the agency did not increase security in response to his statement to approximately 7,500 employees, "you will die," is unsupported. IAF, Tab 7 at 97.

We similarly reject the appellant's argument that the agency did not prove that he was under the influence of alcohol to a degree which would interfere with the proper performance of duty. PFR File, Tab 1 at 7-8. Again, we note that the agency used a narrative charge. When, as here, the agency's charge contains a narrative explanation for the basis of its action, the agency may sustain its charge by proving one or more of the incidents described therein; proof of every incident is not required. *Otero*, 73 M.S.P.R. at 204. In any event, when an agency provides two alternative descriptions of a charge, it need only prove one of them. *Jenkins v. Department of the Treasury*, 104 M.S.P.R. 345, ¶ 9 (citing *Lachance v. Merit Systems Protection Board*, 147 F.3d 1367, 1372-74 (explaining that when an agency "set forth two alternative characterizations" of a charge, proof of one of those alternatives may be sufficient to sustain the charge)), *aff'd per curiam*, 244 F. App'x 349 (Fed. Cir. 2007).

Here, the agency alleged that the appellant was "under the influence . . . to a degree which would interfere with proper performance of duty, or would be prejudicial to the maintenance of discipline." IAF, Tab 7 at 87.[3] Thus,

---

[3] To the extent the appellant is arguing on review that the agency failed to prove he was intoxicated, or that his intoxication caused him to send out the email, we are not persuaded. PFR File, Tab 1 at 7-8. In responding to the proposed removal, the appellant sought to excuse his behavior, in part, by indicating that he had been drinking.

the agency could prove misconduct based either on the appellant's potential inability to perform his duties or the potential prejudice to the maintenance of discipline. As discussed above, the agency proved the latter, and thus the charge.

The administrative judge properly found that the agency did not have to prove a particular level of response to show that the appellant's conduct "would be prejudicial to the maintenance of discipline." ID at 7. We note that "discipline" is a broad term, which the dictionary defines as "control gained by enforcing obedience or order" and "orderly." *Merriam-Webster's Collegiate Dictionary* 330 (10th ed. 2002). The appellant's intoxication clearly impacted the state of order, because his email caused tenant agencies on Fort Douglas to release employees early as a safety precaution. IAF, Tab 7 at 14, 22.

Although it was not necessary for the agency to prove the alternative basis of its charge, we conclude it did so. The appellant's intoxication at work plainly interfered with his job duties as the Alcohol & Drug Control Coordinator, such as training individuals who conduct drug and alcohol testing. HT at 8 (testimony of the appellant). As the deciding official reasonably explained, "[t]he [Alcohol and Drug Coordinator] should be a person who [is not intoxicated while on duty].

---

IAF, Tab 7 at 25. He characterized his drinking as "a terrible decision," and described his efforts to "ensure that nothing like this happens again," including getting "rid of all the alcohol in [his] house." *Id.* Further, he essentially admitted during his hearing testimony that he was under the influence of alcohol when he sent the email. HT at 12-13 (testimony of the appellant). An agency may rely on an appellant's admissions in support of its charge, and an appellant's admission to a charge can suffice as proof of the charge without additional proof from the agency. *Cole v. Department of the Air Force*, 120 M.S.P.R. 640, ¶ 9 (2014). Here, the appellant did not attempt to recant his admissions or claim they were involuntary. Further, his testimony is consistent with his prior admission. Therefore, we find his admission and testimony are preponderant evidence that his use of alcohol caused him to send out the email. *See id.*, ¶¶ 9-11 (finding that an agency proved an appellant used marijuana when he made numerous unrecanted admissions that he did not claim were coerced or otherwise involuntary). In light of this determination, we decline to address the appellant's argument that the administrative judge should not have credited the testimony of the appellant's first-level supervisor as to the appellant's slurred speech and "tirade" during a conversation following the email. PFR File, Tab 1 at 8; ID at 6-7; HT at 33-34 (testimony of the appellant's first-level supervisor).

There's a lot of trust we place in . . . the [Alcohol and Drug Coordinator] as well to adhere to the same standards we would expect of service members[.]" HT at 53 (testimony of the deciding official).

Therefore, the appellant has not provided a reason to disturb the administrative judge's finding that the agency proved the essence of its charge.

<u>The administrative judge properly rejected the appellant's due process arguments.</u>

The appellant also challenges the penalty of removal on due process grounds. Specifically, he argues that (1) the deciding official consulted with "Legal and LMER" without informing the appellant, (2) the agency did not specify which infraction on the table of penalties covered the appellant's misconduct, and (3) the deciding official said he relied on the appellant's lack of trust in his coworkers although the issue of trust was not mentioned in the proposed removal letter. PFR File, Tab 1 at 9-11, 14-15. The appellant also alleges that the agency never provided him with copies of coworkers' complaints, social media posts, and media requests concerning the email, despite the fact that both the proposal and final decision letter referenced them in support of the penalty of removal. *Id.*; IAF, Tab 7 at 14, 22. The administrative judge rejected these arguments below, reasoning that the appellant had a meaningful opportunity to respond to all of the evidence the deciding official considered.[4] ID at 12-16.

A deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on either the merits of a proposed charge or the penalty to be imposed. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999). While confirming or clarifying information is not new, previously undisclosed opinions

---

[4] The administrative judge found the appellant failed to prove that the deciding official considered the U.S. Army Reserve's decision to permanently revoke the appellant's access to its classified and unclassified networks. ID at 15-16; RAF, Tab 2 at 9-14. The appellant does not challenge this determination on review, and we discern no basis to disturb it.

on the evidence are. *Johnson v. Department of the Air Force*, 50 F.4th 110, 115-16 (Fed. Cir. 2022)

The appellant has not identified any new and material evidence the deciding official purportedly obtained in conversations with "Legal and LMER." *See* 5 C.F.R. § 1201.115(a)(2) ("A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error."). Nor has he challenged the veracity of the deciding official's testimony that his conversation with "Command's attorney" did nothing more than confirm that removal was not "outside of [his] bounds as the deciding official." HT at 52-53 (testimony of the deciding official).

Similarly, the appellant has not shown that the agency's failure to specify an offense in the table of penalties and explicitly reference his lack of trust in the proposal letter were new and material evidence. Regarding the agency's table of penalties, the appellant appears to be reraising his argument from below that he was not able to respond fully to the proposed removal because the agency did not label its charge.[5] HT at 26-27 (testimony of the appellant); IAF, Tab 7 at 24, 27-28. The administrative judge found no due process violation, and we agree. ID at 13-14. An agency denies an appellant due process when its deciding official relies, without notifying the appellant, on the recommended penalty in its table of penalties for an offense with which he was not charged. *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶¶ 9-12 (2012). However, the mere lack of a charge label is not a violation of due process. *See Otero*, 73 M.S.P.R. at 202.

---

[5] The appellant also suggested below that the agency erred in failing to provide him with a copy of its table of penalties. IAF, Tab 7 at 27-28. The administrative judge was not persuaded, noting that the table was publicly available online. ID at 14. We further observe that the appellant submitted a copy with his prehearing submissions below. RAF, Tab 2 at 26-33. The appellant does not contest the determination that he could have viewed the table of penalties at any time on the internet, and we discern no basis to disturb it.

Consistent with the agency's decision to use a narrative charge, the deciding official testified that he generally considered the agency's table of penalties but did not "know that there was one [offense that he] considered the most." HT at 64 (testimony of the deciding official); IAF, Tab 7 at 22, 24. The appellant has not identified any evidence that the deciding official considered an offense that was inconsistent with the agency's narrative charge. Nor did he testify that he viewed the narrative charge as correlating with a particular offense on the agency's table. Therefore, the appellant has not stated a basis to grant review.

We likewise find that the deciding official's reliance on the appellant's lack of trust in his coworkers did not violate his due process rights. The appellant's attorney made this due process argument in his closing argument; however, the administrative judge did not address it. HT at 91-92 (closing argument of the appellant's attorney). Therefore, we modify the initial decision to do so. An employee is "not deprived of due process by not being advised in advance that the deciding official might draw [an] inference from the nature of the charged conduct." *Harding v. U.S. Naval Academy*, 567 F. App'x 920, 925-26 (Fed. Cir. 2014).[6] The agency's proposal notice quoted the appellant's email, in which he identified the approximately 7,500 coworkers receiving it as "traitors." IAF, Tab 7 at 87, 97. In making his penalty determination, the deciding official observed that the appellant "has made it clear that the does not trust [his coworkers] and [they] are traitors, a quite slanderous accusation." *Id.* at 23. Similarly, the deciding official testified that the use of the word "traitor" in the proposal notice "signifie[d] some lack of trust" by the appellant in his coworkers. HT at 62 (testimony of the deciding official). We find that the agency did not violate the appellant's due process because the deciding official

---

[6] The Board may rely on unpublished decisions of the U.S. Court of Appeals for the Federal Circuit if it finds the court's reasoning persuasive, as we do here. *See Mauldin v. U.S. Postal Service*, 115 M.S.P.R. 513, ¶ 12 (2011).

logically inferred from the use of the word "traitors" that the appellant did not trust his coworkers.

Finally, the appellant argued below and on review that the agency failed to provide him with evidence of coworkers' complaints, social media posts, or media requests concerning his email. HT at 91 (closing argument of the appellant's attorney); PFR File, Tab 1 at 9-10. The administrative judge rejected this argument because there was no evidence that the deciding official received those documents himself. ID at 14-15; HT at 64 (testimony of the deciding official). She properly concluded that the appellant knew the information would be considered and had the opportunity to respond before he was removed. ID at 15; *see Stone*, 179 F.3d at 1377. Specifically, she quoted the proposal notice, which stated "[y]our email has appeared on social media." ID at 15 (quoting IAF, Tab 7 at 88).

In responding to the proposal, the appellant acknowledged that it stated that his email "may have been shared online," but defended his actions on the basis that he had not shared the email or seen any online posts containing it. IAF, Tab 7 at 28. He did not request any further materials. *Id.* The Board has found that there is no due process violation when, as here, the appellant fails to request the underlying materials on which the agency relies in reaching the removal decision. *McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 18 (2014). For the same reason, the appellant cannot claim that the agency's failure to provide evidence of complaints, social media posts, or media requests constituted harmful error.[7] *See id.*, ¶¶ 16-17 (finding no harmful error because

---

[7] Once the Board determines that the ex parte communications did not violate the appellant's due process rights, it must consider whether the agency's failure to specify in its proposed removal a charge in the table of penalties, that it was considering the appellant's lack of trust in his coworkers, and that the deciding official had a conversation with "Legal and LMER" constituted harmful error. *Ward*, 634 F.3d at 1282. The appellant has not pointed to any rule the agency violated, and we are not aware of one. Moreover, there is no suggestion that the agency would reach a different conclusion in the absence of such error. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 685 (1991) (explaining that the Board will reverse the action for

the appellant did not request the materials underlying his removal). Therefore, we affirm the administrative judge's finding that the agency's failure to provide these documents did not amount to a due process violation.

<u>The administrative judge properly found that the agency established a nexus between the appellant's misconduct and the efficiency of the service.</u>

The administrative judge concluded that there was a nexus between the appellant's misconduct and the efficiency of the service. ID at 7-8. The appellant avers that the agency failed to prove that his removal promotes the efficiency of the service for a variety of reasons, including for example that "there is no tangible evidence that this event caused the Agency to need to increase security." PFR File, Tab 1 at 14-15. There is a presumption of nexus when the misconduct occurred in part at work. *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 24 (2016) (citing *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987)). As the administrative judge found and the appellant does not dispute, the appellant's sustained misconduct occurred while he was on duty and involved the use of Government equipment. ID at 8. Therefore, we find the appellant's arguments without merit and affirm the administrative judge's finding that the agency proved nexus.

<u>The administrative judge properly found that the penalty was within the limits of reasonableness.</u>

The administrative judge found that the deciding official properly considered the relevant *Douglas* factors before concluding that removal was appropriate. ID at 8-11. She therefore deferred to his penalty selection. ID at 8. After reviewing the deciding official's penalty analysis, the administrative judge

---

harmful error only when the evidence and argument of record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error). Nor did the fact that the deciding official did not review the social media posts constitute harmful error because the appellant has not identified any rule requiring the deciding official to review the documents, and there is no suggestion that he would have reached a different conclusion had he either reviewed the documents or not referenced them in the removal decision. *See Stephen*, 47 M.S.P.R. at 685.

concluded that a removal did not exceed the tolerable limits of reasonable. ID at 8-12. The appellant again argues that the penalty of removal is unreasonable. PFR File, Tab 1 at 13-15; RAF, Tab 2 at 4, Tab 4 at 4.

When, as here, all of the agency's charges have been sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013). In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board provided a nonexhaustive list of factors relevant to penalty determinations. The Board will modify the penalty only when it finds that the deciding official failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Davis*, 120 M.S.P.R. 457, ¶ 6.

The administrative judge concluded that the deciding official properly considered the relevant *Douglas* factors based on his written analysis and testimony. ID at 8-11. She credited the deciding official's testimony concerning the severity of the appellant's misconduct and its relation to his job duties. ID at 9-10. Specifically, she credited the deciding official's testimony that the appellant, as the Alcohol & Drug Control Coordinator, should not have been intoxicated on duty. ID at 9; HT at 53 (testimony of the deciding official). As discussed above and contrary to the appellant's suggestion, the agency increased its security because of his email. HT at 82-85 (testimony of the NCOIC). Further, tenant organizations released their full-time staff early on the day in question. IAF, Tab 7 at 22.

The administrative judge found that organizations with whom the appellant worked expressed concern about working with him and that his email appeared on social media, thereby rejecting the appellant's argument that his email did not create notoriety for the agency. ID at 16; HT at 39, 42-43 (testimony of the Human Resources Officer), 54-55 (testimony of the deciding official); PFR File,

Tab 1 at 15. Although the appellant argues that the two most similar charges on the agency's table of penalties do not list removal as a penalty for a first offense, the table is only one factor to be considered in assessing the reasonableness of a penalty. PFR File, Tab 1 at 15; *see Phillips v. Department of the Interior*, 95 M.S.P.R. 21, ¶ 17 (2003), *aff'd*, 131 F. App'x 709 (Fed. Cir. 2005). This is especially true when, as here, the agency has designated the table as a "guide to discipline" and allows "[d]eviations" for matters such as when the misconduct is "especially serious." RAF, Tab 2 at 26; *see Phillips*, 95 M.S.P.R. 21, ¶ 17 (concluding that it was within a deciding official's discretion to apply the listed misconduct that most nearly resembled the circumstances of the appellant's case given that the agency described the table of penalties as a "[g]uide" and "general framework within which supervisors may exercise sound judgment in dealing with the particular circumstances").

The administrative judge found that the deciding official made an independent decision to remove the appellant. ID at 11. She acknowledged that the deciding official stated that the penalty of removal was too severe in an initial email to an agency Human Resources Officer approximately 3 weeks before he issued the removal decision. *Id.*; RAF, Tab 2 at 24. However, she credited the deciding official's testimony that he prematurely expressed that opinion before reviewing the *Douglas* factors and that he concluded that removal was appropriate after conducting that analysis. ID at 11; HT at 51 (testimony of the deciding official).

On review, the appellant argues that the administrative judge erred in crediting the deciding official's testimony because he testified at one point that he could not consider the appellant's intent behind the email but, according to the appellant, contradicted himself when he later testified that he considered the word "traitor" to signify a lack of trust. PFR File, Tab 1 at 12. He argues that the deciding official's "contradictory, noncommittal responses" draw his credibility into question. *Id.* The Board must give "special deference" to an administrative

judge's demeanor-based credibility determinations, "[e]ven if demeanor is not explicitly discussed." *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016).

Here, the appellant has not provided a sufficiently sound reason to overturn the administrative judge's credibility finding, and we discern none. ID at 11; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (finding that the Board may overturn an administrative judge's demeanor-based credibility findings only when it has "sufficiently sound" reasons for doing so). The deciding official testified that he could not know whether the appellant intended the email as a threat and because he "could only consider what was sent in that email." HT at 58 (testimony of the deciding official). He also testified that by using the word "traitor" in the appellant's email he "signifie[d] some lack of trust" in his coworkers. HT at 62 (testimony of the deciding official). We do not perceive these statements to be inconsistent. The deciding official could have concluded that the appellant lacked trust in his coworkers because he called his coworkers traitors in the email itself, while at the same time being unable to further determine the appellant's intent. The deciding official's testimony that he did not consider whether the appellant's actions were malicious supports our interpretation. HT at 58-59 (testimony of the deciding official). Therefore, we defer to the administrative judge's decision to credit the deciding official's testimony.

The appellant has not identified any mitigating factors that the deciding official failed to consider. PFR File, Tab 1. As the administrative judge recognized, the deciding official considered that "the appellant had no prior disciplinary actions, and had 17 years of successful service with the government." ID at 10; IAF, Tab 7 at 21. Further, the deciding official considered the appellant's expressed remorse and additional "significant mitigating circumstances," including "[a]lcohol abuse[, the] anniversary of [his] spouse's death[,] . . . [and] stress." ID at 10-11; IAF, Tab 7 at 22-23. Nonetheless,

the administrative judge explained that the deciding official reasonably determined that aggravating factors outweighed those mitigating factors. ID at 11; IAF, Tab 7 at 23. We see no reason to disturb these well-reasoned findings. *McCarty v. Department of the Navy*, 72 M.S.P.R. 201, 202-03, 205, 207 (1996) (determining that an administrative judge erred in mitigating the removal to a lesser penalty when an appellant with prior discipline was charged with making a statement to a coworker that resulted in anxiety and disruption in the workplace, notwithstanding the appellant's 15 1/2 years of satisfactory service), *aff'd per curiam*, 114 F.3d 1207 (Fed. Cir. 1997); *Tate v. Department of Defense*, 57 M.S.P.R. 180, 189-91 (1993) (finding the penalty of removal was reasonable for the sustained charges of threatening a supervisor and absence without leave even though they were the appellant's first offenses in 24 years of service).

Accordingly, we affirm the initial decision as modified above.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: 

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.